UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEW YORK LIFE INSURANCE COMPANY



Plaintiff,

— against —

Civ. No. _____

UNITED STATES OF AMERICA,

Defendant.



New York Life Insurance Company, for itself and as the parent of the corporations

which are or were members of the affiliated group of corporations for which New York Life

Insurance Company is or was the common parent, brings this action against Defendant, the

United States of America, and alleges as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1346(a)(1) and 26 U.S.C.

§ 7422.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1402(a)(2) because the

principal place of business of Plaintiff is located within this judicial district.

### REFUNDS CLAIMED

3.     Plaintiff brings this action under section 6532 and section 7422 of the Internal Revenue Code of 1986 (the "Code"),[1] as amended, for the recovery of Federal income taxes erroneously and illegally assessed and collected by the Internal Revenue Service (the "IRS"), or such greater amounts that are allowable, together with assessed and collected interest, plus interest thereon from the dates of payment thereof.

4.     This tax refund action is brought for the recovery of the following amounts of Federal income tax and interest erroneously and illegally assessed and collected from New York Life and its subsidiaries for the taxable years ended December 31, 1988, and December 31, 1990 through December 31, 1995, or such greater amounts that are allowable, together with assessed and collected interest, plus interest thereon from the dates of payment thereof:

| Tax Year | Income Tax | Assessed and Collected Interest | Total |
|---|---|---|---|
| 1988 | $    230,302 | -- | $    230,302 |
| 1990 | $61,012,544 | $   494,427 | $61,506,971 |
| 1991 | $14,836,848 | $1,225,549 | $16,062,397 |
| 1992 | $ 1,941,122 | $  766,251 | $ 2,707,373 |
| 1993 | $ 2,042,548 | $  800,821 | $ 2,843,369 |
| 1994 | $ 5,636,527 | $3,596,018 | $ 9,232,545 |
| 1995 | $ 4,828,554 | $2,252,498 | $ 7,081,052 |

---

[1] Unless otherwise clear from context, all section references are to the Code or the Treasury regulations issued thereunder.

### PARTIES TO THIS ACTION

5.      New York Life Insurance Company (hereinafter referred to as "New York Life" or "Plaintiff") is a mutual life insurance company organized and existing under the laws of the State of New York. New York Life was and is engaged, at all times relevant to this action, in the business of writing various forms of individual and group life and health insurance. During each of the years here involved, New York Life was a life insurance company as defined in Code section 816(a).

6.      The principal place of business for New York Life was and is, at all times relevant to this action, located at 51 Madison Avenue, New York, NY 10010. New York Life's employer identification number is 13-5582869.

7.      Defendant is the United States of America.

8.      Plaintiff maintained its books and records and filed its Federal income tax returns on a calendar year basis using the accrual method of accounting during each of the taxable years here involved.

9.      For the taxable year ended December 31, 1988, Plaintiff filed a life-life consolidated Federal income tax return as the common parent.

10.     For each of the taxable years ended December 31, 1990, through December 31, 1995, (referred to herein as tax years 1990 through 1995), Plaintiff filed a life/non-life consolidated Federal income tax return with its subsidiaries as the common parent.

### BRIEF DESCRIPTION OF PLAINTIFF'S CLAIMS

11.     This case concerns the proper time when New York Life's obligation to pay certain policyholder dividend amounts meets the requirements for an income tax deduction under Code section 808(c). Under this provision, a deduction is allowed for "policyholder dividends paid or accrued during the taxable year."

- 3 -

12.    This case presents two specific factual situations in which New York Life claims that its obligation to pay certain policyholder dividend amounts met the requirements for a deduction under Code section 808(c).

13.    The first factual situation involves life insurance policies and annuity contracts that had been credited with a policy dividend up to thirty days prior to the anniversary date of the contract. These contracts will be referred herein to as "Credited Policies." Credited Policies with anniversary dates in the month of January will be referred to herein as January Anniversary Policies. New York Life claims that it may deduct under Code section 808(c), in the year credited, the annual dividend amounts on January Anniversary Policies.

14.    The second factual situation involves life insurance policies that will receive either an annual dividend amount or a termination dividend amount (or both amounts) in the year following the year in which the deduction is claimed. These contracts will be referred to herein as "Eligible Policies." New York Life claims that it may deduct under Code section 808(c), in the year its Board of Directors authorizes payment of the dividend amounts, the smallest dividend amount that must be paid to the owners of these policies in all events. This amount is, in each case, the lesser of the annual dividend amount or the termination dividend amount.

15.    New York Life's liabilities with respect to the January Anniversary Policies and the Eligible Policies both met the requirements for a deduction under Code section 808(c). However, the manner in which the liability met the all-events test of Code section 461(h)(4) is different for the January Anniversary Policies and the Eligible Policies.

16.    Although the circumstances that gave rise to the satisfaction of the all-events test are different for the January Anniversary Policies and the Eligible Policies, there are certain legal issues that are common to both liabilities. These common issues include the proper application

of Code sections 808(c) and 461(h), including New York Life's adoption of the recurring-item exception to the economic performance rules.

## FACTUAL BACKGROUND

17.     Under section 4231(a)(1) of the New York Insurance Law, New York Life was required to ascertain and distribute to the owners of participating life insurance and annuity policies the proportion of any surplus accruing to the policy. This provision states:

> Except as otherwise provided, every domestic life insurance company shall ascertain and distribute annually, and not otherwise, the proportion of any surplus accruing upon every participating insurance policy and annuity or pure endowment contract entitled as hereinafter provided to share therein, issued on or after the first day of January, nineteen hundred seven.

18.     New York Life issues participating life insurance and annuity contracts that provide that the policy will be apportioned a share of the Taxpayer's divisible surplus each year ("the Policies").

19.     The Policies provide that on each policy anniversary any share of divisible surplus apportioned to it will be payable as a dividend if the Policy is then in force and all premiums due have been paid to such anniversary. These amounts are described herein as "annual dividend" amounts.

20.     Under the terms of the Policies, a policyholder may elect to have the annual dividend amount paid or applied in one or more of the following ways: (a) as a cash payment, (b) as a full or partial payment of premiums, (c) as a premium for paid-up additional insurance, or (d) to be held at interest in a deposit account maintained by New York Life. A policyholder is free to change his or her dividend election up to the policy anniversary date.

21.    Under Section 4231(a)(4) of the New York Insurance Law, a life insurance company which apportions and distributes its divisible surplus on an annual basis:

> . . . may apportion and distribute all or any part of its accumulated surplus, in excess of its required minimum surplus, as a part of its dividends apportioned and distributed on an annual basis, or, with the approval of the superintendent, at reasonable intervals with respect to any policy or contract or on its termination by death, maturity or surrender, as additional or extra dividends in an amount deemed by him not inequitable in proportion to the annual dividends paid in preceding years on such policies or contracts. . .

22.    New York Life also distributes a portion of its divisible surplus to owners of certain participating life insurance and annuity contracts upon the termination of the policy by death, maturity or surrender. These distributions are identified herein as "termination dividend" amounts and the Policies that are eligible for such amounts are referred to herein as "Eligible Policies."

23.    New York Life's payment of termination dividend amounts provides its policyholders with a share of its divisible surplus in addition to the share provided through the distribution of annual dividend amounts.

24.    During each of the years 1990 through 1995, the management of New York Life made certain reports and recommendations to its Board of Directors at the November Board meeting concerning the provision for policyholder dividends payable during the following calendar year.

25.    At each November Board meeting, the Board of Directors approved the payment during the following year of annual dividend amounts and termination dividend amounts for participating individual life insurance and annuity policies in accordance with the dividend scales recommended by New York Life's management. The dividend scales provided the basis for the computation of the annual dividend and termination dividend amounts that would apply with

- 6 -

respect to policies with anniversaries in the following year. The dividend scales were expressed in dollars and cents per $1,000 of life insurance (or annuity) face amount. Each dividend scale applied to all the policies in the particular class to which it related. Policies in a class generally have the following characteristics in common: policy form, year of issue, age of the insured at issue, and sex of the insured. Upon the adoption of the dividend scales, it was then possible to compute the annual dividend amount and termination dividend amount for each policy.

26.    In addition, at each November Board meeting, the Board estimated what the amount of the "divisible surplus" of the Taxpayer would be as of the close of the year. (The term "divisible surplus" means the amount of the company's surplus that will be required to meet the dividend liabilities in the following year.)    The divisible surplus amount was determined by taking into account three elements: (i) the dividend scales adopted by the Board, (ii) an estimate of the number of policies that would be in force at year-end (taking into account anticipated lapses and deaths occurring prior to year-end), and (iii) an estimate of the number of policies that would be in force at year-end but that would terminate (because of the insured's death or the surrender of the policy) before being credited with a policy dividend.

27.    Finally, at each November Board meeting, the Board authorized management to prepare and send out any necessary dividend notices.

28.    After the approval by the Board of management's recommendations concerning the payment of policyholder dividends, New York Life, for each year at issue and consistent with its longstanding practice, immediately issued communications to all of its agents notifying them of the action.

29.    At another meeting that was held on the third Wednesday in the month of February of the following year, i.e., in each of the years 1991 through 1996, the Board of

Directors met to review the true state of the affairs of New York Life and to ascertain the surplus earned by the company during the prior year. At each February Board meeting, the Board issued a resolution formally appropriating the amount of divisible surplus to be set aside for the satisfaction of its liability for annual dividend and termination dividend amounts. In determining the divisible surplus, the Board took into account additional information that was not available at its November meeting, namely, the actual number of policies in force at year-end and more current information concerning lapse and mortality experience. The divisible surplus amount was determined by taking into account three elements: (i) the dividend scales adopted by the Board in November, (ii) the actual number of policies that were in force at year-end, and (iii) an estimate of the number of policies that were in force at year-end that would terminate (because of the insured's death or the surrender of the policy) before being credited with a policy dividend.

### FACTUAL BACKGROUND: JANUARY ANNIVERSARY POLICIES

30.     Unlike term life insurance contracts, which provide coverage for a specified period of years, a whole life insurance policy provides life insurance coverage for the entire life of the insured.

31.     Whole life insurance policies may be purchased with a single premium paid at the time the policy is issued. This is relatively uncommon. Most whole life insurance policies are purchased with the payment of recurring premium payments, generally payable for the life of the insured or until the insured attains age 100. These recurring premiums may be paid in monthly installments, quarterly installments, semiannual installments, or by annual payments.

32.     The payment of a recurring premium will keep a whole life insurance policy in force until the date that the next recurring premium is due. For example, the payment of an annual premium will keep a policy in force until the next policy anniversary. By contrast, the payment of a monthly premium will keep a policy in force until the next monthly premium is

due. Thus, the payment of the twelfth monthly premium will keep a policy in force until its next anniversary.

33.    New York Life issues participating life insurance and annuity policies that provide that the policy will be apportioned a share of the divisible surplus each year.

34.    New York Life's whole life insurance policies state that on each anniversary of the policy, any share of divisible surplus apportioned to the policy will be payable as a dividend if the policy is then in force and all premiums due have been paid to that anniversary.

35.    The payment of an annual premium on the prior policy anniversary date satisfies the requirement that "all premiums due have been paid" to the next anniversary since the payment of an annual premium will maintain the contract in force until the next anniversary date. On the other hand, in the case of policies with premiums paid in more frequent installments than annually, the payment of the final installment for the policy year (that is, the second of two semiannual premiums, the fourth quarterly premium or the twelfth monthly premium) is required in order to satisfy the requirement that "all premiums due have been paid" to the next anniversary.

36.    New York Life credited the annual policyholder dividend amount to a policyholder's account up to thirty days in advance of the policy anniversary date if the policyholder had paid all premiums due to keep the policy in force up to that anniversary date.

37.    If the policyholder's payment of all premiums due to keep the policy in force until the anniversary took place thirty or more days in advance of the anniversary date (as would be the case with a premium that was paid annually, semiannually, or quarterly), New York Life credited the dividend amount to the policyholder's account on the thirtieth day preceding the anniversary date.

38.    If the policyholder's payment of all premiums due to the next anniversary date took place within the 30-day period preceding the anniversary date (as may occur with a policy with monthly premiums), the dividend amount was credited when the premium was received.

39.    Once a policy had been credited with a policyholder dividend amount, as described above, the dividend amount with respect to the policy became payable in all events. A policy meeting this description is identified herein as a "Credited Policy."

40.    Subsequent to the crediting of a policyholder dividend to the Credited Policy, New York Life paid the dividend amount in all cases, namely:

a.    If the insured survived until the anniversary date and the policy remained in force until that date, New York Life paid the dividend on the Credited Policy's anniversary date;

b.    If the insured died before the anniversary date, New York Life paid the dividend as a "post-mortem" dividend along with the Credited Policy's death proceeds;

c.    If the policyholder surrendered the Credited Policy before the anniversary date, New York Life paid the dividend amount with the surrender proceeds (or as a separate payment on the anniversary date); and

d.    In some cases, the owner of a Credited Policy may have received the dividend amount in cash up to fifteen (15) days prior to the anniversary date by requesting payment of the dividend before the anniversary date.

41.    In no circumstances were dividend amounts that had been credited to Credited Policies forfeited by the policyholder or otherwise not paid by New York Life for any reason.

42.     On December 31, 1990, and on each subsequent year-end through December 31, 1995, New York Life determined the dividend amounts that had been credited to the accounts of Credited Policies. Each of these dividend amounts was payable in all events not later than on the next anniversary of the Credited Policy. These Credited Policies all had anniversary dates in the month of January and are identified herein as January Anniversary Policies.

43.     An insurance company, such as New York Life, may claim a deduction under Code sections 808(a) and (c) for policyholder dividend amounts that have been "paid or accrued."

44.     For most policies, including those with anniversary dates occurring in the months of February through December, the crediting of the annual dividend up to thirty days prior the anniversary date did not affect the calculation of deductions for policyholder dividends. That is because the date on which the liability becomes payable in all events (the crediting date) and the date on which the dividend amount is generally paid (generally the anniversary date) both occurred within the same taxable year.

45.     However, for the January Anniversary Policies, the crediting of the annual dividend amount up to thirty days before the anniversary date caused the dividend liability to meet the requirements of the all-events test in the month of December (i.e., in the year of crediting) rather than in the following year when it was paid (on the anniversary date in January).

46.    New York Life calculated the total of the annual dividend amounts that were credited to policyholders of January Anniversary Policies in December of the taxable year preceding the year of the anniversary date.   These amounts for the years at issue are as follows:

| Tax Year | Credited Dividend Amounts |
|----------|---------------------------|
| 1990 | $69,374,070 |
| 1991 | $72,082,405 |
| 1992 | $69,928,072 |
| 1993 | $69,056,143 |
| 1994 | $75,507,753 |
| 1995 | $79,740,015 |

47.    The amounts set forth in the table in paragraph 46 are properly deductible by New York Life under Code section 808.

### FACTUAL BACKGROUND:  ELIGIBLE POLICIES

48.    New York Life also distributes a portion of its divisible surplus to owners of participating life insurance policies (if they meet certain criteria) upon the termination of the policy by death, maturity, or surrender.  These amounts are described herein as "termination dividend" amounts and the Policies that are eligible for such amounts are referred to herein "Eligible Policies."

49.    New York Life pays termination dividend amounts on the date of termination of Eligible Policies.  The amount of and the eligibility for a termination dividend varies with the age of the insured on the date the policy was issued, the duration for which the policy has been in force, and the face amount of the policy.

- 12 -

50.    The payment of termination dividend amounts provides policyholders of Eligible Policies with a share of the divisible surplus in addition to the share provided through the distribution of annual dividend amounts.

51.    As of December 31 of each of the years 1990 through 1995, New York Life was required to pay to the owners of Eligible Policies in the subsequent year, in all events, either an annual dividend amount or a termination dividend amount, or both. New York Life calculated, for each Eligible Policy, the annual dividend amount and the termination dividend amount with respect to that policy.

52.    As of December 31 of each of the years 1990 through 1995, there were a limited number of events that could take place with respect to the Eligible Policies during the following year. With respect to each Eligible Policy, only one of the following possible events could take place in the following year:

a.    The policy owner surrendered the Eligible Policy prior to the date that an annual dividend was credited to the Policy. Because the owner surrendered the policy before the annual dividend amount was credited, he or she would not receive an annual dividend amount. However, he or she would be paid the termination dividend amount along with the surrender proceeds.

b:    The insured died before the date that an annual dividend was credited to the Policy. Because the insured died before the annual dividend amount was credited, the policy owner would not receive an annual dividend amount. In this case, the policy owner's beneficiary would be paid the termination dividend amount as a "post-mortem" dividend along with the death proceeds.

    c.  The policy owner kept the Eligible Policy in force until the annual dividend amount was credited to the Policy. In this case, the policy owner would receive the annual dividend amount on the policy anniversary. If the policy was kept in force for the remainder of the year, the annual dividend amount would be the only dividend distribution made during that year with respect to the policy.                                    .

    d.  The policy owner kept the Eligible Policy in force until the annual dividend amount was credited to the Policy. At a later time during the year, the policy owner surrendered the policy (or the insured died). In this case, <u>both</u> an annual dividend amount and a termination dividend amount would be paid during the year.

53.    Thus, in all cases, New York Life was obligated to pay the owner of an Eligible Policy an amount that was in all cases not less than the annual dividend amount or the termination dividend amount, whichever was smaller.

54.    As of December 31 of each year between 1990 and 1995, inclusive, New York Life determined the minimum amount that it was obligated to pay in the following year to policy owners of Eligible Policies (that is, the smaller of the annual dividend amount or the termination dividend amount). New York Life determined this liability on a policy-by-policy basis, for each Eligible Policy (other than those Eligible Policies that were January Anniversary Policies as of December 31 as described above). The calculation included only payments that would be made during the first eight and one-half (8-½) months of the following year on the basis that the Code section 461(h) "recurring-item exception" applied to these deductible amounts.

55.    The minimum amounts determined as described in the preceding paragraph for the years at issue were as follows:

| Tax Year | Dividend Amounts |
|----------|------------------|
| 1990 | $148,856,407 |
| 1991 | $154,156,523 |
| 1992 | $162,012,004 |
| 1993 | $168,711,029 |
| 1994 | $178,344,728 |
| 1995 | $187,893,799 |

56.    The amounts set forth in the table in paragraph 55 are properly deductible by New York Life under Code section 808.

### NATURE OF THE CLAIM

57.    A life insurance company may claim the amount of policyholder dividends "paid or accrued" during the tax year as a deduction under Code sections 808(a)(1) and 808(c).

58.    In general, policyholder dividends accrue when the "all-events test" has been satisfied. The "all-events test" generally requires that (a) all events have occurred that establish the fact of the liability and (b) the amount of the liability can be determined with reasonable accuracy. Code section 461(h)(4); Treas. Reg. § 1.461-1(a)(2).

59.    However, Code section 461(h) provides that the all-events test shall not be treated as met any earlier than when economic performance occurs with respect to that liability (the "economic performance requirement"). Code section 461(h)(3)(A) provides an exception to the economic performance requirement for certain recurring items if, in addition to other requirements, economic performance with respect to that liability occurs within eight and one-

- 15 -

half (8-½) months after the close of the taxable year (the "recurring-item exception"). Thus, even though economic performance may occur no earlier than the actual payment of a liability, if the recurring-item exception applies, a taxpayer may claim a deduction in the year in which the liability accrues rather than in the subsequent year of payment.

60.    New York Life may calculate its deduction for policyholder dividends under Code sections 808(a)(1) and 808(c) by treating policyholder dividend amounts on certain policies as "paid or accrued" as of the end of each of the tax years 1990 through 1995.

61.    For each of the tax years 1984 through 1989, inclusive, New York Life's deduction for policyholder dividends was limited to the amount of dividends actually paid in that tax year.

62.    In 1990 (and in each tax year thereafter), New York Life claimed a deduction for policyholder dividends paid or accrued during the year. The change in the accounting treatment of its liability for policyholder dividends reflected the adoption by New York Life of the recurring-item exception to the economic performance requirement of Code section 461(h). The consent of the Commissioner of the Internal Revenue Service to the adoption of the recurring-item exception was expressly granted in Treas. Reg. § 1.461-5(d)(3). In addition, a transition rule in the Treasury regulations, which refers to a "cut-off" method, permitted New York Life to deduct the amount of the accrued liability at the close of the tax year 1990, unreduced by any amounts that would have been accrued as of the close of the previous tax year under the accrual method of accounting. Treas. Reg. § 1.461-4(m)(1)(iii).

63.    At the end of each tax year 1990 through 1995, New York Life was irrevocably obligated to pay certain amounts of policyholder dividends in the following year.

64. In the case of each of the January Anniversary Policies, New York Life was irrevocably obligated to pay in all cases the policyholder dividend amounts that had been credited to the Policies on or before December 31.

65. In the case of each of the Eligible Policies, New York Life was irrevocably obligated to pay policyholder dividend amounts in an amount that was in no event less than the smaller of the annual dividend amount or the termination dividend amount.

66. For each of the tax years 1990 through 1995, New York Life properly calculated its deduction for policyholder dividends under Code sections 808(a)(1) and 808(c) by treating policyholder dividends paid or accrued as of year end as including the sum of (a) the liability to pay (in the following year) annual dividend amounts on January Anniversary Policies and (b) the liability to pay (at any time during the first eight and one-half (8-½) months of the following year) the lesser of the annual dividend amounts or termination dividend amounts on the Eligible Policies.

67. The IRS incorrectly took the position that New York Life may not deduct for each of the tax years 1990 through 1995 policyholder dividend amounts as described in the preceding paragraph.

68. New York Life is entitled to treat the policyholder dividend amounts described in paragraphs 46 and 55, <u>supra</u>, as a liability that is paid or accrued under Code section 808.

### PAYMENT OF TAX SHOWN ON RETURNS

69. New York Life and its subsidiaries timely filed a consolidated Federal income tax return for each of tax years 1988, and 1990 through 1995 within the time period prescribed by law, and timely made payments to the IRS in the amounts shown on the returns for those years within the time period prescribed by law.

- 17 -

70.    In addition, New York Life and its subsidiaries received tax refunds and made additional payments (in addition to the payments of tax shown on the returns and the payment of the assessments described in paragraph 74, infra) for each of the tax years 1990 through 1995.

### ASSESSMENTS AND PAYMENT OF ASSESSED TAX

71.    The IRS caused the returns filed by New York Life and its subsidiaries for each of the tax years 1988 and 1990 through 1995 to be audited.

72.    During each of the tax years 1990 through 1995, the IRS allowed New York Life to deduct policyholder dividends only when they were paid. The IRS did not permit any deduction for amounts that were credited to the January Anniversary Policies in advance of the policy anniversary date. Nor was any deduction allowed with respect to amounts payable in the following year to the owners of Eligible Policies.

73.    The IRS proposed Federal income tax deficiencies that were based, in part, on the denial of New York Life's position that it was eligible to deduct certain policyholder dividend amounts in the years 1990 through 1995 that were payable in the following year.

74.    Plaintiff made payments to the IRS for amounts necessary to satisfy the tax deficiencies assessed by the IRS for each of the tax years 1990 through 1995, in accordance with a Form 870-AD (Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment), and with the express reservation of the right to prosecute a claim for refund on specified grounds, including the grounds on which this Complaint is founded.

### FILING OF REFUND CLAIMS

75.    On April 18, 2000, New York Life and its subsidiaries timely submitted a claim for refund of Federal income tax, together with assessed and collected interest plus interest thereon, on Form 1120-X (Amended U.S. Corporation Income Tax Return) for each of the tax years 1990 through 1993 with the IRS, and a claim for a credit carryback to the year 1988.

76.    On November 13, 2002, New York Life and its subsidiaries timely submitted a

claim for refund of Federal income tax, together with assessed and collected interest plus interest

thereon, on Form 1120-X (Amended U.S. Corporation Income Tax Return) for each of the tax

years 1994 and 1995 with the IRS.

77.    The total amount of Federal income tax claimed as a refund for these tax years

was:

| Tax Year | Tax Refund Amount |
|----------|-------------------|
| 1988 | $   8,694,151 |
| 1990 | $ 78,376,373 |
| 1991 | $ 27,001,586 |
| 1992 | $ 41,190,910 |
| 1993 | $ 46,925,041 |
| 1994 | $113,630,725 |
| 1995 | $   4,828,554 |

78.    The total amount of the claim for each of these tax years reflected, in part, an

increase in the deduction for policyholder dividends for tax years 1990 to 1995 that is the subject

of this Complaint, as well as other adjustments to taxable income that are not the subject of this

Complaint, and statutory and correlative adjustments.

79.    The amount of the increase in the deduction for policyholder dividends for tax years 1990 through 1995 was:

| Tax Year | Increase in Policyholder Dividend Deduction |
|----------|---------------------------------------------|
| 1990 | $218,230,477 |
| 1991 | $  8,008,451 |
| 1992 | $  5,701,148 |
| 1993 | $  5,827,096 |
| 1994 | $ 16,085,309 |
| 1995 | $ 13,781,333 |

80.    In calculating the amount of the deduction for policyholder dividends, New York Life and its subsidiaries treated policyholder dividends paid or accrued as of year end as including the sum of (a) New York Life's liability to pay (in the following year) annual dividend amounts on January Anniversary Policies and (b) New York Life's liability to pay (at any time during the first eight and one-half (8-½) months of the following year) an amount equal to the smaller of the annual dividend amounts or termination dividend amounts on Eligible Policies.

81.    New York Life is entitled to treat the policyholder dividend amounts described in the preceding paragraph as a liability that was paid or accrued.

82.    For the tax year 1990, New York Life claimed an increase in the amount of deductions for the policyholder dividends equal to the amount of the policyholder dividends described in paragraph 79, supra, as of year end 1990 without any reduction for amounts that would be accrued at the end of the previous taxable year under the "cut-off" method described in paragraph 62, supra, or such greater amount which may be allowed.

- 20 -

83.    For each of the tax years 1991 through 1995, New York Life and its subsidiaries claimed an increase in the amount of deductions for policyholder dividends equal to the amount of the policyholder dividends described in paragraph 79, supra, as of year end, less the amount of such policyholder dividends as of the year end of the previous taxable year, or such greater amount which may be allowed.  For example, for the tax year 1993, the increase in the amount of deductions for policyholder dividends was equal to $5,827,096, that is, the amount of the policyholder dividend liability on December 31, 1993 ($237,767,172), over the policyholder dividend liability on December 31, 1992 ($231,940,076).

84.    In the alternative, for each of the tax years 1990 through 1995, New York Life and its subsidiaries claimed that if the amount of policyholder dividends paid or accrued at the end of each year does not include the amount described in paragraph 55, supra, then that additional amount equals the amount of the liability to pay (in the following year) annual dividends amounts on the January Anniversary Policies, or such greater amount which may be allowed.  Under this alternative claim, the amount of the increase (decrease) in the deduction for policyholder dividends for tax years 1990 through 1995 was:

| Tax Year | Increase in Policyholder Dividend Deduction |
|----------|---------------------------------------------|
| 1990 | $69,374,070 |
| 1991 | $ 2,708,335 |
| 1992 | ($2,154, 333) |
| 1993 | ($ 871,929) |
| 1994 | $ 6,451,610 |
| 1995 | $ 4,232,262 |

- 21 -

85.     In addition, in the event that New York Life and its subsidiaries are not entitled to use the "cut-off" method described in paragraph 62, supra, to elect to change to the accrual method in tax year 1990, Plaintiff claimed it is entitled to an adjustment for the tax years at issue under applicable law and regulations in connection with the adoption of the recurring item exception.

86.     On January 16, 2007, the IRS denied the refund claims submitted by New York Life and its subsidiaries for tax years 1988 and 1990 through 1993 on the basis, in part, that the "all- events" test had not been satisfied for purposes of treating the liability to pay a policyholder dividend as "paid or accrued."

87.     On July 22, 2008, New York Life and its subsidiaries entered into an agreement with the IRS to extend the time to bring a refund claim for tax years 1988 and 1990 through 1993 to December 31, 2009 (Form 907 (Agreement to Extend the Time to Bring Suit)).

88.     On September 8, 2009, the IRS and New York Life and its subsidiaries executed a second Form 907 (Agreement to Extend the Time to Bring Suit) to extend the time to bring the refund claim for tax years 1988 and 1990 through 1993 to June 30, 2010.

89.     On September 14, 2009, the IRS denied the refund claims submitted by New York Life and its subsidiaries for tax years 1994 and 1995.

90.     The claims for refund described in paragraphs 75 and 76, supra, stated the grounds for the refund stated in this Complaint, and they are incorporated by reference into this Complaint.

### PRAYER FOR RELIEF

91.     For the reasons set forth herein, New York Life and its subsidiaries have overpaid their Federal income tax for each of the tax years 1988 and 1990 through 1995, and there is now due and owing from Defendant to Plaintiff the following amounts or such greater amounts that

are allowable, together with assessed and collected interest, plus interest thereon from the dates of payment thereof:

| Tax Year | Income Tax | Assessed and Collected Interest | Total |
|----------|-----------|----------------------------------|-------|
| 1988 | $    230,302 | -- | $    230,302 |
| 1990 | $61,012,544 | $   494,427 | $61,506,971 |
| 1991 | $14,836,848 | $1,225,549 | $16,062,397 |
| 1992 | $  1,941,122 | $   766,251 | $  2,707,373 |
| 1993 | $  2,042,548 | $   800,821 | $  2,843,369 |
| 1994 | $  5,636,527 | $3,596,018 | $  9,232,545 |
| 1995 | $  4,828,554 | $2,252,498 | $  7,081,052 |

92.    Although payment thereof has been demanded, no part of the sum of the amounts set forth in paragraph 91, supra, has been credited, remitted, refunded, or repaid to Plaintiff or anyone on its account.

93.    Plaintiff has made no transfer or assignment of the claim for relief herein presented or any part thereof and is the sole and absolute owner of the claim.

94.    No action on this claim has been taken by the Congress of the United States or by any of the departments of the Government, other than the action by the Commissioner hereinbefore described.

95.    No other suit or process by Plaintiff is pending on such claim in any other court.

96.    Plaintiff prays for judgment in favor of their claim for relief against the Defendant, the United States of America, in the amount of $99,664,009, or such other amount as this Honorable Court may determine to be legally refundable, together with interest thereon as

provided by law, and for Plaintiff's costs of this action, and for such other relief as may to this Honorable Court seem just and proper.

Dated:  June 16, 2010

                                        Respectfully submitted,

                                        John D. Lovi   (JL-5928)
                                        Steptoe & Johnson LLP
                                        750 Seventh Avenue
                                        New York, NY 10019
                                        (212) 506-3910
                                        (212) 506-3950 (fax)

                                        *Attorneys for Plaintiff*

*Of Counsel*

Arthur L. Bailey
     *pro hac vice* motion pending
J. Walker Johnson
     *pro hac vice* motion pending
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 429-3000
(202) 429-3902 (fax)

          - and -

Michael M. Oleske (MO-6453)
Senior Vice President and Chief Tax Counsel
New York Life Insurance Company
51 Madison Avenue
New York, NY 10010
(212) 576-7573
(212) 447-8322 (fax)